UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM CLEMENTS, *et al.*, on behalf of )
himself and all others similarly situated, )
                           )
             Plaintiff, )
                           )
     v.                    )     Case No. 22-cv-04634
                           )
GUNNAR OPTIKS LLC,         )
                           )
            Defendant. )

## MOTION TO DISMISS THE CLASS ACTION COMPLAINT

NOW COMES the Defendant, GUNNAR OPTIKS LLC (Hereafter "GUNNAR"), by its attorney, Richard J. Miller of the Miller Law Firm, P.C., and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully requests this Honorable Court to dismiss Plaintiff WILLIAM CLEMENTS's Class Action Complaint filed in this cause with prejudice for having failed to state a claim upon which relief could be granted, and in support thereof respectfully states as follows:

## FACTUAL ALLEGATIONS

1.      That the Class Action Complaint seeks damages against the Defendant for alleged violations of the Biometric Information Privacy Act of 2008, 740 ILCS 14, *et seq.* ("BIPA").

2.      That paragraph 31 provides inter alia that Plaintiff is a resident of the City of Chicago, Cook County, Illinois.

3.      That paragraph 32 provides inter alia that beginning in February 2019, Plaintiff began to visit Gunnar.com to search for sunglasses.

4.      That paragraph 33 provides inter alia that over the next 36 months, Plaintiff visited the site and used the Gunnar Virtual Try-On feature approximately five times.

5.    That paragraph 35 provides inter alia that each time Plaintiff used the Gunnar Virtual Try-On feature, Defendant collected, obtained, possessed, and/or used Plaintiff's facial geometry.

6.    That paragraph 36 provides inter alia and upon information and belief, Defendant also stored Plaintiff's facial geometry thereafter.

7.    That paragraph 37 provides inter alia that Defendant did not inform Plaintiff in writing that it was capturing, collecting, storing obtaining, or using scans of their facial geometry, did not inform Plaintiff in writing of the specific purpose and length of time for which their facial geometry was being collected, stored, or used, and did not obtain a written release from Plaintiff authorizing Defendant to capture, collect, store, obtain, or use their facial geometry.

8.    That paragraph 38 provides inter alia that Plaintiff has never been informed of the specific purpose or length of time for which Defendant collected, stored, obtained or used their facial geometry; any biometric data retention policy developed by Defendant, or whether Defendant will ever permanently delete their biometric data.

9.    That paragraph 40 provides inter alia that Defendant is a California limited liability company with its principal place of business in Carlsbad, California.

## ARGUMENT

10.    To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint's factual allegations must establish a plausible right to relief and be sufficient to "raise a right to relief above the speculative level." *Twombly* at 555.

The Court should not "accept 'bald assertions' as true" or "credit 'unsupported conclusions and

unwarranted inferences.'" *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, *3 (D. Del. Sept. 30, 2021). The "tenet that a court must accept as true all of the allegations contained in a Complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* When discovery is likely to be more than unusually costly — as with a class action — the complaint must include as much factual detail as may be required to show that plaintiffs have plausible claims. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). The purpose of the plausibility requirement is to avoid the "in terrorem" effect of allowing plaintiffs with a "largely groundless claim" to "force defendants into either costly discovery or an increased settlement value." *Id*

11.     This Biometric Information Privacy Act ("BIPA") putative class action against defendant GUNNAR should be dismissed with prejudice. Paragraph four provides inter alia that GUNNAR is a manufacturer and online retailer of computer glasses, sunglasses, and reading glasses through partnerships with other retailers or through its website. The Class Action Complaint ("Complaint") alleges that GUNNAR offers an "online" "Virtual Try-On" tool that violates BIPA Sections 15(a), (b) and (d) by purportedly collecting and disclosing scans of facial geometry without informed consent, and by failing to have a publicly available data retention and destruction policy.

12.     A threshold issue in this case is whether the biometric identifiers or biometric information "at issue fall within BIPA's health care exemption." *Vo* v. *VSP Retail Dev. Holding, Inc.*, 2020 WL 1445605, *2 (N.D. Ill. March 25, 2020) *2. To fall within the exemption, the collected biometric information need only: "(1) be obtained from a patient in a health care setting; or (2) be collected, used, or stored in connection with health care treatment, payment, or operations under HIPAA." *Id.* at *2.

13.     Applying the first prong of BIPA's health care exemption, HIPAA broadly defines "health care" as "care, services or supplies related to the health of an individual" that "includes, but is not limited, to" any "service, assessment, or procedure with respect to the physical ... condition, or functional status of an individual or that affects the structure or function of the body," or any "sale ... of a device ... in accordance with a prescription":

*Health care* means care, services, or supplies related to the health of an individual.

*Health* care includes, but is not limited, to the following:

(1)  Preventative, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and

(2)  Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription. 45 C.F.R. §160.103.

14.     Here, the Class Action Complaint alleges that GUNNAR "manufactures and sells patented gaming and computer glasses, reading glasses, and sunglasses to protect against digital eye strain." Prescription and non-prescription eyewear are both Class I medical devices under federal regulations. 21 C.F.R. §886.5842, 886.5844 and 886.5850. The Complaint has not (and cannot) plead around the fact that both prescription and non-prescription eyeglasses are Class I medical devices. Thus, GUNNAR provides "health care" or operates in a "health care setting" by selling Class I medical "device[s] ... in accordance with a prescription." 45 C.F.R. §160.103.

15.     The Class Action Complaint further alleges that GUNNAR offered a Virtual Try-On feature of its eyeglasses on its website, which allows a potential customer to virtually try on GUNNAR's Eyewear, allowing them to see how the Eyewear would look on them when worn. In

Page 4

order to show a potential customer how the Eyewear would look on their face, GUNNAR's Virtual Try-On feature uses potential customers' facial geometry and facial recognition software to position the Eyewear on the potential customer's face and keep it there as the potential customer moves their head to see the Eyewear from different angles. As Judge Kocoras held in *Vo,* the Virtual Try-On of Class I medical devices facilitate the health care service of selling these medical devices by "measuring an individual's face" to help fit the eyewear to plaintiff's face. That constitutes a health care "service or procedure that affects the function of the body — namely vision." 2020 WL 1445605 at *2, citing 45 C.F.R. §160.103. Judge Kocoras explained that the:

> Virtual Try-On software facilitates this health care service by ... measuring an individual's face to ensure the appropriate fit of corrective eyewear and confirm the eyeglasses are properly positioned over a patient's eyes. In obtaining Vo's facial geometry to accomplish these objectives, VSP's Virtual Try-On collected biometric information from a patient in a health care setting, *Vo* at *2. In short, GUNNAR "provides health care by selling a device or equipment — namely eyewear — and by offering a service or procedure that affects the function of the body — namely vision." *Vo* at *2. *See also Marsh v. CSL Plasma Inc.,* 503 F.Supp.3d 677, 684 (N.D. Ill. Nov. 30, 2020) (Chang, J.) (concurring with *Vo's* application of BIPA's health care exemption to the health care service provided by the eyewear Virtual Try-On).

16.    The second prong of BIPA's health care exemption also applies — the alleged biometric identifier is "collected, used, or stored in connection with health care treatment, payment, or operations under [HIPAA]." HIPAA defines "treatment" to include "the provision, coordination, or management of health care and related services by one or more health care

providers...." 45 C.F.R. §164.501. HIPAA defines a "health care provider" to include any "organization who furnishes, bills, or is paid for health care in the normal course of business." 45 C.F.R. §160.103.

Under HIPAA, "health care" involves any "care, services or supplies related to the health of an individual" and "includes, but is not limited" to any "service, assessment or procedure with respect to the physical or mental condition, or functional status of an individual or that affects the structure or function of the body." 45 C.F.R. 5160.103. Thus, GUNNAR provides "health care" or operates in a "health care setting" by both selling Class I medical devices and providing a Virtual Try-On of its Class I medical devices, which constitutes a "service" or "assessment" that "affects the ... function of the body — namely vision." *Vo* at *2, citing 45 C.F.R. §160.103.

Accordingly, GUNNAR is a "health care provider" that sells Class I medical devices and provided its Virtual Try-On health care services in the normal, ordinary course of its business. Thus, the alleged capture of Plaintiff's biometric identifiers by the Virtual Try-On is information collected, used, or stored for health care treatment, payment or operations under HIPAA. 740 ILCS 14/10. Accordingly, plaintiff's BIPA claims fall squarely within the second prong of BIPA's health care exemption and should be dismissed. *Id*

17.    HIPAA defines a "covered entity" to include a "health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." *See* 45 C.F.R. § 160.103. *"Transaction* means the transmission of information between two parties to carry out financial or administrative activities related to health care." *Id.*

GUNNAR is an online eyewear retailer that sells eyewear. Accordingly, GUNNAR is a "covered entity" — a health care provider who may receive health care information such as eyeglass prescriptions in electronic form from actual or prospective customers in connection with

the production, sale and delivery of Class I medical devices. 45 C.F.R. §160.103.

HIPAA's preemption of BIPA under these circumstances is straightforward. HIPAA preempts any contrary state law and, even if not contrary, state laws that are less stringent than HIPAA. *See* 45 C.F.R. 160.203(b). HIPAA defines protected health information ("PHI") to include both "biometric identifiers" and "full face photographic images and any comparable images." 45 C.F.R. §164.514(b)(2)(i)(P)-(Q). The U.S. Department of Health and Human Services has issued comprehensive HIPAA regulations covering the confidentiality and security of PHI (such as biometric identifiers and full-face photographic images) that are more stringent than BIPA. *See* 45 C.F.R. 160.203. Further, HIPAA provides unique protocols for the collection, use, and disclosure of PHI that are also more stringent than BIPA. *See, e.g.,* 45 C.F.R. §§164.306, 164.308, 164.310, 164.312, 164.314, 164.316, 164.502, 164.506, 164.508, 164.510, 164.512, 164.514.

These regulations do not merely "touch upon" the subject matter of BIPA. *CSX Trano., Inc. v. Eastenvog* 507 U.S. 658, 664 (1993). On the contrary, the federal regulations at issue are more stringent than BIPA, "substantially subsume the subject matter of the relevant state law" and, thus, preempt BIPA. *Id.*

BIPA even acknowledges the federal statute (HIPAA) to which it defers. Under BIPA, a "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. However, expressly *excluded* from this definition is "information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal [HIPAA]." *Id.* Where a health care provider such as GUNNAR collects alleged biometric identifiers or information for the purposes of health care treatment, payment, or operations such as providing products or services to patients, GUNNAR cannot

be held liable for a violation of BIPA based on the act of collecting or disclosing such information.

18.     It must be noted that another judge in the Northern District of Illinois very recently reached the same conclusion as Judge Kocoras in the *Vo* case. Judge Leinenweber granted defendant's motion to dismiss an amended complaint alleging violations of BIPA Sections 15(a), (b) and (d) by purportedly collecting and disclosing scans of facial geometry without informed consent, and by failing to have a publicly available data retention and destruction policy in *Svoboda v. Frames for America Inc.*, 2022 WL 4109719 (N.D. Ill. Sept. 8, 2022). The Court found that in using the virtual try-on software, Plaintiff therein was a patient receiving a health care service in a health care setting. "Therefore, BIPA's health care exemption applies, and Frames cannot be held liable BIPA for its collection and use of Svoboda's biometric identifiers or information." *Svoboda*, *3. The Motion to Dismiss the Amended Class Action Complaint was granted. Most recently on February 10, 2023, the Honorable Judge Elaine E. Bucklo ruled in favor of a defendant on the very same facts presented in this case, finding that the use of the VTO software by defendant, Christion Dior, Inc., falls within BIPA's health care exemption of biometric information being obtained from a patient in a health care setting, *Warmack-Stillwell v. Christian Dior, Inc.*, 2023 U.S. Dist. LEXIS 22926 (N.D. Ill. February 10, 2023). Judge Bucklo's decision in this case further reinforces and comports with the reasoning in the prior two cases, *Vo v. VSP Retail Dev. Holding, Inc.*, 2020 WL 1445605, (N.D. Ill. March 25, 2020) *Svoboda v. Frames for America Inc.*, 2022 WL 4109719 (N.D. Ill. Sept. 8, 2022), on why the use of the VTO software falls within the HIPPA exemption of biometric information being obtained from patient in a health care setting. Therefore, the Defendant's' Motion to Dismiss should be granted without delay.

CLEMENTS was a patient receiving a health care service in a health care setting.

Therefore, BIPA's health care exemption applies, and GUNNAR cannot be held liable BIPA for

its collection and use of CLEMENTS' biometric identifiers or information.

WHEREFORE, Defendant, GUNNAR OPTIKS LLC, prays as follows:

A.  For entry of an order dismissing Plaintiff WILLIAM CLEMENTS's Class Action
    Complaint with prejudice;

B.  For such other and further relief as this Court deems just and equitable.

Respectfully submitted,

_/Richard J. Miller__
Richard J. Miller

MILLER LAW FIRM, P.C.
Attorney for Defendant Gunnar Optiks LLC
1051 Perimeter Drive, Ste 400
Schaumburg, IL 60173
847.995.1205
ARDC No. 6294472
richard.miller@millerlawfirm.org

## CERTIFICATE OF SERVICE

I, Richard J. Miller, an attorney, certify that I served the foregoing *Defendant's Motion to Dismiss the Class Action Complaint* Unopposed Motion, which was filed on December 6, 2024, with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to the following:

Adam J. Levitt
alevitt@dicellolevitt.com
Amy E. Keller
akeller@dicellolevitt.com
Nada Djordjevic
ndjordjevic@dicellolevitt.com
James Ulwick
julwick@dicellolevitt.com
**DICELLO LEVITT LLC**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900

James J. Pizzirusso (*admitted pro hac vice*)
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 540-7200

Steven M. Nathan (*admitted pro hac vice*)
snathan@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, New York 10004
Telephone: (646) 357-1100

*Counsel for the Plaintiff and Putative Class*

s/ Richard J. Miller