## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM CLEMENTS, on behalf of himself and all other similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 22 C 4634 |
| v. | ) ) | Judge Sara L. Ellis |
| GUNNAR OPTIKS LLC, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

William Clements brings this putative class action against Gunnar Optiks LLC ("Gunnar"), alleging that Gunnar violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/15, when Gunnar collected, stored, and used Clements' facial geometry as part of its online Virtual Try-On feature for glasses and sunglasses. Now, Gunnar moves to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Gunnar qualifies for BIPA's health care exemption. Because Gunnar's conduct falls into the second prong of the BIPA health care exemption, the Court grants Gunnar's motion to dismiss [36].

## BACKGROUND[1]

Gunnar is a California limited liability company with its principal place of business in California. Gunnar operates as a luxury fashion retailer that sells a variety of high-end consumer products, including clothing, shoes, jewelry, and eyewear. Among its other products, Gunnar manufactures and sells non-prescription glasses and sunglasses. Specifically, Gunnar sells

---

[1] The Court takes the facts from Clements' complaint and presumes them to be true for the purpose of resolving Gunnar's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

patented glasses designed to protect against digital eye strain. Gunnar sells its products at brick-and-mortar stores as well as a website.

Gunnar's website offers a "Virtual Try-On" feature where the website utilizes the consumer's camera to scan the consumer's face and positions eyewear on the consumer's face to show them how certain glasses would look. Doc. 1 at 2. The Virtual Try-On feature uses facial recognition software from a company called FittingBox to create the image. Further, the Virtual Try-On feature collects a consumer's facial geometry scans as part of the process of creating the image. At Gunnar's request, FittingBox collects and stores consumers' facial geometry scans when they use the Virtual Try-On feature. Both FittingBox and Gunnar possess full access to consumers' facial geometry information, and FittingBox has transmitted consumers' facial geometry scans to at least one of Gunnar's servers.

Clements resides in Chicago, Illinois. Beginning in February 2019, Clements visited Gunnar's website to search for sunglasses. Over the next thirty-six months, Clements used the Virtual Try-On feature approximately five times. When Clements used the Virtual Try-On feature, Gunnar did not inform Clements in writing that it was capturing, obtaining, collecting, storing, or using a scan of his facial geometry; did not inform Clements of the length of time or purpose of collecting, storing, or using his facial geometry; and did not obtain Clements' written consent to Gunnar's collection, use, or storage of his facial geometry.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

2

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

BIPA "imposes numerous restrictions on how private entities collect, retain, disclose and destroy biometric identifiers." *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 610 (N.D. Ill. 2020) (quoting *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 1); *see also* 740 Ill. Comp. Stat. 14/10 ("'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."). Section 15(a) requires private entities in possession of biometric identifiers to: "(1) develop a written, publicly available policy that includes a retention schedule and destruction guidelines and (2) permanently destroy data upon the satisfaction of the 'initial purpose for collecting or obtaining' it or 'within 3 years' of the entity's last interaction with the person, whichever comes first." *Cothron*, 467 F. Supp. 3d at 610 (quoting 740 Ill. Comp. Stat. 14/15(a)). Section 15(b) requires private entities, before they collect a person's biometric identifier, to inform that individual in writing that the entity is collecting or storing their biometric identifier; the purpose of collecting the biometric identifier; the length of term for which the entity is collecting, storing, and using the biometric identifier; and to receive a written release from the individual. *See* 740 Ill. Comp. Stat. 14/15(b). Section 15(d) states that a private entity may not disclose or otherwise disseminate a person's biometric identifier without (1) their

consent, (2) authorization by the person for a financial transaction, (3) legal requirement, or (4) requirement by a warrant. *Id.* at 14/15(d).

BIPA includes a health care exemption, which excludes from its definition of "biometric identifier" information (1) "captured from a patient in a health care setting" or (2) "collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996" ("HIPAA"). *Id.* at 14/10. BIPA does not define the terms "patient" and "health care." Gunnar argues that both prongs of the health care exemption apply to its conduct in this case.

Because the Court is sitting in diversity, it applies the substantive law of Illinois in this case. *See, e.g.*, *Protective Life Ins. Co. v. Hansen*, 632 F.3d 388, 392 (7th Cir. 2011) ("[A] federal court sitting in diversity applies the substantive law of the state in which it is sitting."). "[I]n the absence of prevailing authority from the state's highest court," the Court "give[s] great weight to the holdings of the state's intermediate appellate courts." *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1020 (7th Cir. 2024) (quoting *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)). The Court should deviate from an intermediate appellate court decision "only where there are persuasive indications that the highest court of the state would decide the case differently." *Allstate Ins. Co.*, 285 F.3d at 637. In essence, the Court's objective here is to "reach the correct result by predicting how the Illinois Supreme Court would rule if faced with this issue." *See Am. Dental Ass'n v. Hartford Steam Boiler Inspection & Ins. Co.*, 625 F. Supp. 364, 367 (N.D. Ill. 1985).

The Court begins with the second prong of the health care exemption, whether Gunnar "collected, used, or stored [Clement's facial geometry] for health care treatment, payment, or operations under" HIPAA, because the Illinois Supreme Court has provided guidance on the

interpretation of this prong, although it has never faced this precise issue. *See Mosby v. Ingalls Mem'l Hosp.*, 2023 IL 129081, at ¶¶ 28–54. Notably, the Illinois Supreme Court found that the use of the phrase "under [HIPAA]" in the second prong supported that "the legislature was directing readers to discern the meaning of" "health care treatment, payment, and operations" in that prong. *Id*. at ¶ 52. With this direction, the Court similarly looks at the definitions from HIPAA to assess whether Gunnar's collection of Clement's facial geometry falls within the second prong of the BIPA health care exemption.

HIPAA defines "health care" as "care, services, or supplies related to the health of an individual" and to include:

> (1) Preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and
>
> (2) Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

45 C.F.R. § 160.103. HIPAA also defines "health care operations," "treatment," and "payment." *See* 45 C.F.R. § 164.501. "Treatment" includes:

> [T]he provision, coordination, or management of health care and related services by one or more health care providers, including the coordination or management of health care by a health care provider with a third party; consultation between health care providers relating to a patient; or the referral of a patient for health care from one health care provider to another.

*Id.* "Health care operations" are "activities of the covered entity to the extent that the activities relate to covered functions" such as "[c]onducting quality assessment and improvement activities," "[r]eviewing the competence or qualifications of health care professionals," "activities related to the creation, renewal, or replacement of a contract of health insurance or

5

health benefits," "[c]onducting or arranging for medical review, legal services, and auditing functions," "[b]usiness planning and development," and "[b]usiness management and general administrative activities of the entity." *Id.* Lastly, "payment" includes "[t]he activities undertaken by: . . . a health plan to obtain premiums or to determine or fulfill its responsibility for coverage . . . ; or [a] health care provider or health plan to obtain or provide reimbursement for the provision of health care." *Id.*

Based on the HIPAA definitions and the facts Clements alleges, Gunnar collected, used, or stored Clement's facial geometry for health care treatment. Because non-prescription sunglasses and glasses designed to prevent digital eye strain are preventive care for eye injuries and maintain eye health, they fall under HIPAA's definition of health care. *See Vo v. VSP Retail Dev. Holding, Inc.*, No. 19 C 7187, 2020 WL 1445605, at *2 (N.D. Ill. Mar. 25, 2020) (finding that selling prescription and non-prescription eyewear was health care under the HIPAA definition). Further, federal regulations identify glasses frames and non-prescription sunglasses as Class I medical devices, which means that federal regulations classify them as related to medical care and subject them to certain controls. *See* 21 C.F.R. § 886.5842–50; *Classify Your Medical Device*, U.S. FDA, https://www.fda.gov/medical-devices/overview-device-regulation/classify-your-medical-device (last accessed Apr. 21, 2025). Gunnar collected, used, or stored Clement's facial geometry for health care treatment because Gunnar used the Virtual Try-On feature for the provision of health care to Clements, in the form of showing him how glasses would look on his face, which is fitting him for preventive or maintenance health equipment. *See Warmack-Stillwell v. Christian Dior, Inc.*, 655 F. Supp. 3d 742, 746 (N.D. Ill. 2023) (considering a Virtual Try-On feature and finding that "the tool facilitates the provision of a medical device that protects vision"). Gunnar in this setting was acting as a health care provider

under HIPAA because Gunnar furnishes sunglasses and protective non-prescription glasses for payment in the ordinary course of business. *See* 45 C.F.R. § 160.103 (defining "health care provider" to include "any other person or organization who furnishes, bills, or is paid for health care in the normal course of business"). Therefore, under the applicable HIPAA definitions, Gunnar's conduct in this case, as alleged in the complaint, qualifies for the second prong of the BIPA health care exemption.

This holding is consistent with the Illinois Appellate Court's recent decision in *Marino v. Gunnar Optiks LLC*, 2024 IL App (1st) 231826. In *Marino*, the Illinois Appellate Court answered a certified question regarding whether a person using Gunnar's Virtual Try-On feature was a "patient in a health care setting." *Id.* ¶ 1. The *Marino* court found that only the first prong of the health care exemption, which applies to "information captured from a patient in a health care setting," was at issue, and that an individual using Gunnar's Virtual Try-On feature did not qualify for that prong. *Id.* ¶¶ 2, 9. Further, the court explained that "HIPAA definitions apply only to the second part of the Act's health care exclusion" based on the Illinois Supreme Court's decision in *Mosby*, so the *Marino* court did not apply the HIPAA definitions or apply the second prong. *Id.* ¶ 34. In sum, the *Marino* court's conclusion matches this Court's own finding that under *Mosby*, HIPAA definitions apply to the terms in the second prong of the BIPA health care exemption and that inquiry under that second prong is "distinct" from the first prong.[2] *See id.*

---

[2] The Court's holding in this case is also consistent with the three cases from this district addressing whether Virtual Try-On features qualify for the first prong of the BIPA health care exemption because, while those cases found that the Virtual Try-On feature qualified for the first prong of the BIPA health care exemption, they did not consider the applicability of the second prong. *See Warmack-Stillwell*, 655 F. Supp. 3d at 746 ("Only the first exemption—the 'general health care exemption'—is at issue here; defendant does not argue that the second exemption—the 'HIPAA exemption' applies."); *Svoboda v. Frames for Am., Inc.*, No. 21 C 5509, 2022 WL 4109719, at *2 (N.D. Ill. Sept. 8, 2022) ("[T]he Court will analyze Svoboda's claim through the purported 'general health care exemption.'); *Vo*, 2020 WL 1445605, at *2–3 (assessing the first prong of the BIPA health care exemption and finding it applicable, and not reaching the second prong).

To conclude, Gunnar's conduct in this case qualifies for the second prong of the BIPA health care exemption because Gunnar obtained Clement's facial geometry information to collect, use, and store in connection with health care treatment under HIPAA.  Because Gunnar qualifies for the second prong of the BIPA health care exemption, the Court cannot hold Gunnar liable under BIPA for collecting, using, or storing Clements' facial geometry.  The Court grants Gunnar's motion to dismiss.  The Court does not need to reach the parties' arguments regarding HIPAA preemption or the first prong of the exemption in this case.  Further, because this dispute falls into the BIPA health care exemption, the Court finds that amendment would be futile and so dismisses Clements' claims with prejudice.

## CONCLUSION

Because Clements has failed to state an actionable claim, the Court grants Gunnar's motion to dismiss [36] and dismisses Clements' complaint with prejudice.

Dated: April 24, 2025

_____
SARA L. ELLIS
United States District Judge

8